[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10921

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SYLVIA ANA GUERRA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:20-cr-00021-KD-MU-2

_____

Before JILL PRYOR, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Appellant Sylvia Ana Guerra appeals her convictions for conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a). She argues that the district court plainly erred by instructing the jury on deliberate ignorance because the instruction was incompatible with the requirement that the government prove that she willfully joined the conspiracy and was not warranted by the evidence. After careful review, we affirm.

### I.

#### A.

The charges in this case arise from a traffic stop of a tractor-trailer in Baldwin County, Alabama. At the time of the stop, Fred Turner was driving the tractor-trailer, and Guerra was riding as a passenger.

Turner and Guerra were romantic partners who had been involved in an on-again, off-again relationship for approximately three years. Turner traveled from South Carolina to Laredo, Texas in his Chevrolet Avalanche, a pick-up truck, to see Guerra. From Laredo, Turner and Guerra drove in the Avalanche to Houston, where Turner's tractor-trailer was parked.

In Houston, they retrieved Turner's tractor-trailer, which had a nine-car hauler attached. Turner was supposed to pick up a load of cars and transport them on his tractor-trailer to South Carolina. After they retrieved the tractor-trailer, Turner told Guerra that he had lost the load, but they would still travel to South Carolina. Turner then loaded the Avalanche, which was having transmission problems, onto the car hauler and began to drive from Houston to South Carolina.

During the trip back to South Carolina, Turner was driving on the interstate through Baldwin County, Alabama, when he was pulled over by law enforcement. Officer Jason Kolbe with the Baldwin County Sherriff's Office stopped Turner after observing him violate state laws by driving for too long in the left-hand lane and failing to maintain his lane.

Kolbe claimed that when he approached the truck, he witnessed both Turner and Guerra behaving suspiciously. According to Kolbe, Turner displayed "overly nervous behavior." Doc. 141-1 at 18.[1] He was "extremely talkative" and had labored breathing. *Id.* Turner's hands were shaking when he gave Kolbe his license. Guerra appeared to be "very frozen" and "zoned out." *Id.* at 42–43.

Kolbe spoke with Turner about his travel plans and what he was transporting. With his suspicious aroused, Kolbe asked Turner for permission to search the tractor-trailer. Turner re-

---

[1] "Doc." numbers are the district court's docket entries.

fused. Kolbe, who had a drug sniffing dog with him, had the dog walk around the outside of the tractor-trailer. The dog alerted at the passenger side of the cab, and Kolbe and his partner conducted a warrantless search.

Inside the truck cab, Kolbe found a pistol in a backpack. According to Kolbe, he had earlier seen Guerra retrieve her driver's license from the backpack. Kolbe asked Guerra about the pistol, and she answered that it belonged to Turner.

The officers continued to search the cab. In the sleeper area, Kolbe noticed a black duffel bag partially covered by a blanket. When Kolbe removed the blanket and opened the bag, he found wrapped packages inside the bag that appeared to be cocaine.[2] According to Kolbe, the drugs "likely came from across the border" because "the packing [was] consistent with cartel-type narcotics." *Id.* at 45. The duffel bag was found about three feet from where Guerra had been sitting in the passenger seat. In the same area, the officers found a second, empty duffle bag, which another officer on the scene claimed had a "very strong odor of cocaine." *Id.* at 85.

The officers handcuffed Turner and Guerra and placed them under arrest. Kolbe then approached Guerra, asking, "You want to deliver it? . . . Do you want to get back in that truck and take that shit where it's going? Simple question." GX 13 at 0:01–

---

[2] Later testing confirmed that Kolbe found 31.9 kilograms of powder cocaine.

0:12.[3] Kolbe then remembered that Guerra had not received a *Miranda* warning and said, "Don't answer that. . . . Don't say anything yet." *Id.* at 0:15–0:20.

After Guerra was informed of her *Miranda* rights, Kolbe resumed questioning her about the drugs. When he asked, "[w]here is it going?", Guerra responded, "I seriously don't know, sir." *Id.* at 1:03–1:10. He then asked, "[h]ow much is it?", and Guerra indicated that she was unable to answer, saying "they just meet me on the side." *Id.* at 1:10–1:15. When questioned about where they picked up the "dope," Guerra responded, "I don't know that. . . . We're just getting on the road." *Id.* at 1:20–1:32. Kolbe then proposed that Guerra deliver the cocaine in the tractor-trailer. She answered, "I'd be dead. . . . They don't know me." *Id.* at 2:00–2:05.

Officer Drew Bailey transported Guerra to the Baldwin County Sheriff's Office. During the drive, Guerra asked Bailey, "What is it that you all found in the truck?" GX 15 at 0:03–0:08. When Bailey answered that they had found drugs, Guerra responded, "I figured that." *Id.* at 0:08–0:17. Bailey told Guerra that they suspected the drugs were either cocaine or methamphetamine. Upon hearing this, Guerra began to cry and said that if she had known what Turner was doing, she would have stayed at home.

---

[3] "GX" numbers are the government's exhibits at trial.

Later in the drive, Guerra told Bailey about Turner's behavior during their trip. She said that Turner had received suspicious phone calls but that she had not pressed him about the calls because they were not married.

When Guerra arrived at the Baldwin County Sheriff's Office, she signed a *Miranda* waiver form and was interviewed by Special Agent Matthew Chakwin. Guerra told Chakwin about her on-again, off-again relationship with Turner. She described how in the past she had taken other trips in the tractor-trailer with Turner and received payment for helping him transport legitimate loads of cargo. She also told Chakwin that she knew Turner and his brother previously had used the car hauler to transport narcotics, but she had warned Turner that she would not continue their relationship if he continued to transport drugs.

Chakwin then talked to Guerra about whether there were any signals that might have clued her into the fact that something illegal was happening on this trip. A few weeks before the trip Guerra overheard Turner on the phone talking about "going to get white girls," which she learned meant bricks of cocaine. Doc. 141-1 at 116–17. She also described how she originally believed they would be transporting a load of cars in the hauler. But when they arrived in Houston, Turner told her that they had lost the load and was laughing about it. While they were traveling, she noticed that Turner was carrying a duffel bag that she did not recognize. She also saw that he was carrying three different cellphones on their trip even though he only used one of the phones

21-10921                Opinion of the Court                7

for his legitimate business. While on the trip, Turner received multiple phone calls during which he spoke in a low voice. Turner also insisted that Guerra wear her seatbelt, which was unusual for him. She also noticed that any time she tried to go to the sleeper section of the cab, Turner would distract her.

## B.

Guerra was charged with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2(a). Guerra pleaded not guilty to both charges and proceeded to trial.[4]

At trial, the jury heard testimony from the officers who conducted the traffic stop and interviewed Guerra. The government's evidence also included video footage from the body cameras that Kolbe and Bailey wore.

At the conclusion of the trial, the district court instructed the jury about the elements for the conspiracy and drug possession offenses. For the conspiracy count, the court explained, the government had to prove beyond a reasonable doubt that Guerra "agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute a controlled substance" and "knew

---

[4] The grand jury also charged Turner with the same crimes and one count of possessing a firearm during a drug-trafficking crime. Before trial, the district court severed their cases. In a separate trial, Turner was convicted of all the charges against him.

the unlawful purpose of the plan and willfully joined in it." Doc. 141-3 at 7. The court instructed that if Guerra "played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion," she could be found guilty. *Id.* But the court cautioned that "simply [being] present at the scene of an event or merely associating with certain people and discussing common goals and interests" was insufficient. *Id.*

With regard to the drug possession count, the court instructed the jury that it had to find beyond a reasonable doubt that Guerra "knowingly possessed a controlled substance" and "intended to distribute the controlled substance." *Id.* at 8. The court explained that Guerra could be held responsible if she "intentionally join[ed] with [another] person to commit a crime." *Id.*

The court's instructions also addressed deliberate ignorance. The court explained that "[i]f a defendant's knowledge of a fact is an essential part of the crim[e], it's enough that [the] defendant was aware of a high probability that the fact existed, unless the defendant actually believed the fact didn't exist." *Id.* The court further instructed that "[d]eliberate avoidance o[f] positive knowledge" was the "equivalent of knowledge." *Id.* The court explained that "if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so . . . she may deny knowledge of the package's contents," the jury could conclude

that she knew about the contraband. *Id.* at 8–9. Guerra did not object to the charge.

The jury found Guerra guilty of both counts. Guerra subsequently filed a motion for a new trial, arguing that the district court erred in giving a deliberate ignorance instruction. The district court denied the motion. The district court ultimately sentenced Guerra to a total term of 120 months' imprisonment. This appeal followed.

## II.

We generally review the legal accuracy of jury instructions *de novo* and the phrasing of an instruction for an abuse of discretion. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). District courts have broad substantial discretion when formulating jury instructions so long as "the charge as a whole accurately reflects the law and the facts." *Id.* (internal quotation marks omitted). We will not reverse a conviction on the basis of a jury charge unless "the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Id.* (internal quotation marks omitted).

When a defendant does not specifically object to a jury instruction "before the jury retires," we review a challenge to the instruction for plain error. *United States v. Starke*, 62 F.3d 1374, 1380–81 (11th Cir. 1995). "To prevail under plain error review, [the defendant] must show that the district court made an error, that the error was plain, and that it affected his substantial rights."

*United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020). We may reverse based on plain error only when the error also "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* There is no plain error absent precedent— our own, or Supreme Court precedent—that directly resolves the issue. *United States v. Sammour*, 816 F.3d 1328, 1337 (11th Cir. 2016).

## III.

Guerra argues that the district court erred in giving the deliberate ignorance instruction. She argues that the instruction was improper because (1) it allowed the jury to conclude—based on a deliberate ignorance theory—that she willfully joined the conspiracy and (2) it was not warranted under the facts of this case. After carefully considering these arguments, we cannot say that the district court erred, let alone plainly erred, in giving the deliberate ignorance instruction.[5]

To convict a defendant of a conspiracy to distribute cocaine, a jury must find that: (1) a conspiracy existed; (2) the defendant "knew of the essential objectives of the conspiracy"; and (3) the defendant "knowingly and voluntarily participated in the conspiracy." *United States v. Calderon*, 127 F.3d 1314, 1326 (11th Cir. 1997) (internal quotation marks omitted).

---

[5] Because Guerra failed to challenge the jury instructions before the jury retired, we review for plain error only. *See Starke*, 62 F.3d at 1380–81.

Guerra first argues that the district court's deliberate ignorance instruction was improper because it allowed the jury to convict her without finding that she willfully joined the conspiracy. We disagree.

A deliberate ignorance jury instruction "is premised on the belief that acts conducted under the guise of deliberate ignorance and acts committed with positive knowledge are equally culpable." *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991). The instruction "is appropriate only if it is shown that the defendant was aware of a high probability of the fact in question and that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Puche*, 350 F.3d 1137, 1149 (11th Cir. 2003) (internal quotation marks omitted).

We previously have approved of the use of a deliberate ignorance instruction in a conspiracy case. *See United States v. Willner*, 795 F.3d 1297, 1315 (11th Cir. 2015). In *Willner*, a conspiracy to commit health care fraud case, the district court gave a deliberate-ignorance instruction. *Id.* at 1315. The court instructed the jury that to convict one or both defendants of conspiracy, it had to find that the "defendant knew the unlawful purpose of the plan and willfully joined in it." *Id.* (internal quotation marks omitted). The court then explained in the deliberate ignorance instruction that the jury could find the defendant "knew" about the fraudulent scheme if "it determine[d] beyond a reasonable doubt that the defendant had every reason to know, but deliberately

closed his eyes." *Id.* (alterations adopted) (internal quotation marks omitted).

On appeal, the defendants challenged the deliberate ignorance instruction. *Id.* We held that the instruction was proper because the district court's instruction applied only to the "issue of whether the defendants knew of the unlawful purpose of the conspiracy" and the court "did not give a deliberate ignorance instruction on the issue of whether the defendants willfully joined in the conspiracy." *Id.*

The same is true here. The district court instructed the jury that to convict, it had to find both that Guerra "knew the unlawful purpose of the plan and willfully joined in it." Doc. 141-3 at 7. The court then explained in the deliberate ignorance instruction that the jury could find that Guerra had the requisite knowledge of a fact if it determined that she "had every reason to know but deliberately closed her eyes." *Id.* at 9. Just like in *Willner*, the court's deliberate ignorance instruction applied only to the "issue of whether [Guerra] knew of the unlawful purpose of the conspiracy" and not to the separate "issue of whether [she] willfully joined in the conspiracy." 795 F.3d at 1315.

Guerra contends that it is never appropriate for a district court to give a deliberate ignorance instruction in a conspiracy case. *See* Appellant's Br. at 13 (arguing that "[d]eliberate avoidance and specific intent are mutually exclusive" (internal quotation marks omitted)). She relies on the Second Circuit's decision in *United States v. Mankani*, in which that court concluded that a

deliberate ignorance instruction was inappropriate in a conspiracy case. *See* 738 F.2d 538, 547 n.1 (2d Cir. 1984) (stating "if the person can consciously avoid learning about a secret agreement, how then can she manifest an intent to join that agreement?"). But in *Willner*, we carefully considered *Mankani* and distinguished that case, concluding that "a deliberate ignorance instruction is permissible to establish that a defendant knew of the unlawful purpose of the conspiracy, but not to establish that he willfully joined in the conspiracy."[6] *See* 795 F.3d at 1315.

Guerra also argues that the district court erred in finding that the evidence at trial warranted a deliberate ignorance instruction. She argues that the instruction should not have been given because the evidence reflected that she "had no reason to know or suspect the trip was to transport drugs." Appellant's Br. at 23.

The instruction was appropriate here because the government introduced evidence that Guerra was aware of the high probability that Turner was transporting drugs and purposely avoided learning all of the facts. The government's evidence included that shortly before the trip, she overheard Turner on the phone talking about "going to get white girls," which she understood was a code for cocaine. Doc. 141-1 at 116–17. After telling

---

[6] We also noted in *Willner* that the Second Circuit has retreated from this apparent holding in *Mankani* because it has recognized that a deliberate ignorance charge is appropriate when knowledge of the fraudulent goal of the conspiracy is at issue. *See Willner*, 795 F.3d at 1316 (citing *United States v. Fletcher*, 928 F.2d 495, 502 (2d Cir. 1991)).

Guerra that they would be hauling a load of cars from Houston to South Carolina, Turner later said, while laughing, that the load had been canceled and they would travel to South Caroline without any cargo. While they were traveling, Guerra noticed that Turner was transporting a duffel bag that she did not recognize, carrying two additional cellphones, and tried to distract her whenever she attempted to go into the sleeping area of the cab. In addition, she observed Turner engage in other behavior that was unusual for him: he took multiple phone calls in which he talked in low tones and required her to wear a seat belt. On top of all this, Guerra knew that Turner previously had used his car hauler to transport drugs. Even though she noticed all these red flags, Guerra chose to ask Turner no questions.

Guerra points to other evidence in the record that she says suggests that she was not aware of a high probability that they were transporting drugs. In particular, she points out that upon departing Laredo, she rode with Turner when he drove his pickup truck through a drug checkpoint and a K-9 did not alert to the vehicle. But this evidence, at most, indicates that Guerra would have understood that there were not drugs in the pick-up truck when they travelled from Laredo to Houston. It does not change that the government introduced evidence that there was a "high probability" Guerra was aware the duffel bag in the tractor-trailer contained drugs and purposefully avoided learning this fact. *See*

*Puche*, 350 F.3d at 1149. We thus cannot say that the district court plainly erred in giving a deliberate ignorance instruction.[7]

## IV.

For the reasons set forth above, we affirm the district court's judgment.

**AFFIRMED.**

---

[7] Guerra also argues that the district court abused its discretion when it denied her motion for a new trial because without the deliberate ignorance instruction, she says, her conviction was not supported by the weight of the evidence. Guerra explicitly conditions this argument on the success of her challenge to the deliberate ignorance instruction. *See* Appellant's Br. at 25–26. Because the district court did not plainly err in giving the deliberate ignorance instruction, this challenge also fails.